DSS:AAS
F.#2011R00283

# M-11-755

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

EDUL AHMAD,

             Defendant.

- - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

**COMPLAINT AND AFFIDAVIT IN
SUPPORT OF ARREST WARRANT**

(T. 18, U.S.C., § 1349)

EASTERN DISTRICT OF NEW YORK, SS:

        BRYAN J. TREBELHORN, being duly sworn, deposes and says
that he is a Special Agent with the Federal Bureau of
Investigation (the "FBI"), duly appointed according to law and
acting as such.

        On or about and between January 1, 2007 and July 31,
2007, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendant EDUL
AHMAD, together with others, did knowingly and intentionally
conspire to execute a scheme and artifice to defraud a financial
institution, to wit: Countrywide Home Loans, and to obtain
moneys, funds, credits, assets, securities, or other property,
owned by and under the custody and control of such financial
institution, by means of materially false and fraudulent
pretenses, representations and promises, contrary to Title 18,
United States Code, Section 1344.

1

(Title 18, United States Code, Section 1349)

The source of my information and grounds for my beliefs are as follows:

1.     I have been a Special Agent with the FBI for approximately three-and-a-half years, and I am currently assigned to a financial institutions fraud squad, which investigates violations of federal criminal laws affecting financial institutions and other financial crimes.  In this position, I have conducted physical surveillance, interviewed witnesses, reviewed extensive documents obtained through the service of subpoenas, and used other investigative techniques to secure relevant information for use in criminal prosecutions.

2.     My knowledge of the information set forth in this affidavit is based upon my personal participation in this investigation and in numerous other investigations of fraud perpetrated against financial institutions, including bank and wire fraud, my review of records and reports, my debriefing of cooperating witnesses, my discussions with witnesses and victims, my conversations with other law enforcement agents involved in this investigation and similar investigations, my conversations with and review of information provided by financial institutions, and my law enforcement experience and training.

3.     Because this affidavit is being submitted for the limited purpose of establishing probable cause to support the

2

issuance of an arrest warrant, it does not include all of the facts I have learned during the course of this investigation. Where actions, conversations and statements of others are reported in this affidavit, they are reported in substance and in part unless otherwise indicated.

I.   Overview of the Mortgage Fraud Scheme

4.   Since approximately 2000, a group of co-conspirators (the "Co-conspirators") has defrauded various lending institutions (the "Lenders") by obtaining mortgages on properties (the "Properties") located in the Eastern District of New York and elsewhere through fraudulent means, including by falsifying mortgage loan applications, appraisals, title reports and other documents.  That false information made the borrowers appear to be more creditworthy, and falsely enhanced the purported value of the Properties.  As a result, the Lenders were fraudulently induced to issue mortgage loans secured by the Properties.

5.   In some instances, the Co-conspirators executed the scheme by using individuals (the "Straw Buyers") to conceal the true ownership of the Properties.  In particular, the Co-conspirators recruited Straw Buyers to pose as the purchasers of some of the Properties.  The Straw Buyers generally were individuals with good credit scores, but with income and assets that were insufficient to secure a mortgage loan.  At the

direction of the Co-conspirators, the Straw Buyers agreed to apply for mortgages on the Properties. In reality, the Co-conspirators were the true owners of the Properties purportedly purchased by the Straw Buyers. In exchange for the use of their names and good credit, the Straw Buyers often received a fee.

6.     Once a Straw Buyer was recruited, the Co-conspirators prepared and caused to be prepared mortgage applications for the Properties. These mortgage applications contained numerous misrepresentations and material falsehoods designed to make the Straw Buyers appear more creditworthy. Among other things, the mortgage applications falsely inflated the bank account balances and income for the Straw Buyers. Additionally, the mortgage applications falsely stated that the Straw Buyers would live at the Properties. This misrepresentation was material to the Lenders because the Lenders were more likely to issue mortgage loans to borrowers who would be living at the Properties and would have a heightened interest in repaying the loan so as to avoid losing his or her home. The Co-conspirators caused these applications and supporting documents to be sent to the Lenders by facsimile or via electronic transmissions.

7.     As a result of these misrepresentations, the Lenders issued mortgage loans to the Straw Buyers. These mortgage loans were initially transmitted to the closing

4

attorneys' bank accounts by wire transfer. The Co-conspirators controlled the proceeds of the loans issued to the Straw Buyers. In most instances, the Co-conspirators did not make mortgage payments to the Lenders for the Properties, and the mortgage loans defaulted.

II.   The Defendant's Approval of Fraudulent
      Mortgage Applications

8.   Since approximately 1994, the defendant EDUL AHMAD owned and operated a mortgage brokerage business (the "Mortgage Business") and a real estate company (the "Real Estate Company"). Since approximately 2000, AHMAD has owned and operated a catering business (the "Catering Business"). The investigation has revealed that, on numerous occasions, AHMAD conspired to obtain mortgage loans from Lenders through fraudulent means. During 2006 and 2007 alone, AHMAD participated in the preparation of approximately 163 mortgage loan applications to Countrywide Home Loans ("Countrywide") for which Countrywide has suffered losses.

9.   For example, the investigation has revealed that, on or about and between January 1, 2007 and July 31, 2007, the defendant EDUL AHMAD conspired with others to fraudulently obtain mortgage loans from Countrywide, through the use of Straw Buyers (hereinafter referred to as "Straw Buyer 1" and "Straw Buyer 2"), for a property located in South Ozone Park, New York (hereinafter referred to as the "South Ozone Park Property") and a property located in Jamaica, New York (hereinafter referred to as the

"Jamaica Property"). Using fake credit information pertaining to Straw Buyer 1 and Straw Buyer 2, AHMAD obtained bank financing for the South Ozone Park Property and the Jamaica Property.

A.   The South Ozone Park Property

10.   Through the investigation, I have retrieved mortgage loan documents for the South Ozone Park Property, dated June 28, 2007. The amount of the mortgage loan was $417,000, and the lending institution was Countrywide, which was insured by the Federal Deposit Insurance Corporation (the "FDIC"). The purported purchaser was Straw Buyer 1.

11.   This mortgage application contains numerous material misstatements as to the credit-worthiness of Straw Buyer 1. For example, the mortgage application states that Straw Buyer 1 earned $9,850 per month as an executive chef at the Catering Business. Additionally, the mortgage loan documents falsely state that Straw Buyer 1 intended to occupy the South Ozone Park Property as a primary residence. Notably, the mortgage application lists a variation of the defendant EDUL AHMAD's name ("A. Edul") as Straw Buyer 1's landlord. Finally, the mortgage loan documents state that Straw Buyer 1 did not own any other real estate properties.

12.   During the investigation, I have spoken with a cooperating witness (the "CW"), who has pleaded guilty to bank fraud charges arising from his/her participation in the mortgage

6

fraud scheme detailed herein, and is cooperating with the government in the hope of receiving a lesser sentence. The CW worked with the defendant EDUL AHMAD in the real estate business for approximately 15 years. The CW further stated that he/she knew both AHMAD and Straw Buyer 1 well. According to the CW, at all times relevant to this Complaint, AHMAD and Straw Buyer 1 were married and never intended to live in the South Ozone Property, but instead lived together in a different residence. Moreover, according to the CW, while AHMAD owns the Catering Business, Straw Buyer 1 never worked there, as a chef or in any other capacity. Additionally, the CW informed the government that, on numerous occasions, Straw Buyer 1 purchased properties on behalf of AHMAD.

13. Real estate records reflect that AHMAD and Straw Buyer 1 have never lived in the South Ozone Property, but rather lived in another property located in Queens, New York, which was owned by Straw Buyer 1 during all times relevant to this Complaint. Additionally, a confidential source ("CS-1"), who has previously provided reliable information, has similarly informed the government that Straw Buyer 1 never worked at the Catering Business. Finally, another confidential source ("CS-2"), who has also previously provided reliable information and worked with AHMAD at the Mortgage Business for several years, informed the government that (1) CS-2 participated in the preparation of the

7

mortgage loan application for the South Ozone Property; (2) AHMAD was the principal author of the application; and (3) Straw Buyer 1 purchased the South Ozone Property on behalf of AHMAD. CS-2 further informed the government that, on numerous occasions, Straw Buyer 1 purchased properties on behalf of AHMAD.

B.    The Jamaica Property

14.    Through the investigation, I have also retrieved mortgage loan documents for the Jamaica Property, dated March 16, 2007. The amount of the mortgage loan was $292,500, and the lending bank was Countrywide, which was insured by the FDIC. The purported purchaser was Straw Buyer 2.

15.    The mortgage application for Straw Buyer 2 includes numerous material misstatements as to his/her credit-worthiness. For example, the mortgage application states that Straw Buyer 2 earned $6,650 per month as a "catering manager" at the Catering Business. Additionally, the mortgage loan documents falsely state that Straw Buyer 2 intended to occupy the Jamaica Property as a primary residence. The mortgage application includes a certification of employment for Straw Buyer 2, attesting that the Mortgage Business had consulted with a "manager" at the Catering Business and verified that Straw Buyer 2 had been employed at the Catering Business since November 2002.

16.    The investigation has revealed that Straw Buyer 2 never worked at the Catering Business, but rather was employed as

8

a real estate agent at the Real Estate Business. Furthermore, in 2011, I interviewed Straw Buyer 2, who stated, in sum and substance, the following: (1) he/she never worked at the Catering Business; (2) in March 2007, he/she was employed as a real estate agent at the Real Estate Business; and (3) he/she never intended to occupy the Jamaica Property as a primary residence. Additionally, Straw Buyer 2 stated that he/she had purchased the Jamaica Property together with AHMAD and AHMAD had paid him/her money for participating in the transaction. Notably, the defendant EDUL AHMAD is not listed as a borrower on the mortgage application.

17. The CW has corroborated Straw Buyer 2's statements. The CW has informed the government that, at all relevant times to this Complaint, the CW knew Straw Buyer 2 well and that Straw Buyer 2 worked at the Real Estate Business, rather than the Catering Business, and never lived in the Jamaica Property. The CW further informed the government that Straw Buyer 2 has purchased multiple properties on behalf of the defendant EDUL AHMAD. Additionally, CS-2 has also informed the government that Straw Buyer 2 never worked at the Catering Business.

WHEREFORE, your deponent respectfully requests that the defendant EDUL AHMAD be dealt with according to law.

BRYAN J. TREBELHORN
Special Agent
Federal Bureau of Investigation

Sworn to before me this
21st day of July, 2011

HON. JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

10